UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01085-JPH-MKK |
| | ) |
| TEAMSTERS LOCAL UNION NO.135, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Christopher Jones alleges that Teamsters Local Union No. 135 ("Local 135") discriminated against him and defamed him when union members filed grievances stating that Mr. Jones was racist and posted on social media that he was a member of the Ku Klux Klan. In his amended complaint, Mr. Jones brought a Title VII claim and state-law defamation claim against Local 135. Local 135 has filed a Rule 12(b)(6) motion to dismiss the Title VII claim and to relinquish jurisdiction over the supplemental state-law claim. Dkt. [36]. For the reasons below, that motion is **GRANTED.**

**I.
Facts and Background**

Because Defendant has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Mr. Jones is a manager at United Parcel Service ("UPS") in Indianapolis. Dkt. 33 at 2 ¶ 6. Local 135 is a labor union that represents employees at the

1

facility where Mr. Jones works. *Id.* ¶ 7. Beginning in April 2022, Chris Stowers, a Black male and Local 135 steward, began using the union grievance system to file false and frivolous complaints about Mr. Jones. *Id.* ¶ 10, 12. Mr. Stowers also encouraged other Black members of Local 135 to file similar claims and informed UPS employees that Mr. Jones disliked African Americans. *Id.* ¶ 14, 16. Mr. Jones complained about Mr. Stowers's conduct but Local 135 did not take responsive action.[1] *Id.* at 3 ¶ 20. As a result, Mr. Jones's reputation was damaged, and he was investigated and alienated at work. *Id.* ¶¶ 22–23, 25.

Mr. Jones brings two claims against Local 135 in his amended complaint: a federal Title VII claim alleging he was subjected to a racially hostile work environment due to his race, and a state-law defamation claim. Dkt. 33 at 3–4. Local 135 moves to dismiss the Title VII claim for failure to state a claim and to relinquish jurisdiction over the state-law defamation claim. Dkt. 36.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] Mr. Jones does not state who he complained to about Mr. Stowers' conduct in his amended complaint. *See* dkt. 33 at 3. "Drawing all reasonable inferences in favor" of Mr. Jones, *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018), the Court infers that he complained to Local 135 about Mr. Stowers' conduct.

2

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616. "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

### III.
### Analysis

#### A. Union liability under Title VII

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a union may be liable in its role as an employer under § 2000e-2(a), or as a labor organization under § 2000e-2(c). Because Mr. Jones is not employed by Local 135, § 2000e-2(a) does not apply, leaving § 2000e-2(c) as the only part of the statute that could possibly apply. Dkt. 33 at 1. That subsection makes it

3

"an unlawful employment practice for a labor organization [] to exclude or expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(c)(1).

Local 135 argues that Mr. Jones's Title VII claim must be dismissed because he is not a union member, and the union did not otherwise represent him in an agency capacity, so it cannot be liable under § 2000e-2(c).  Dkt. 36 at 1.  Mr. Jones responds that § 2000e-2(c)'s plain language—"any individual"—makes his claim viable because it prohibits the union from discriminating against anyone in the workplace, regardless of union affiliation.  Dkt. 39 at 2.  He also argues that he is within Title VII's "zone of interests," or in other words, is an individual the statute is intended to protect.  Dkt. 39 at 2, 4.

The Court's analysis begins with the statutory language.  In *Maalik v. Int'l Union of Elevator Constructors, Local 2*, the Seventh Circuit "held that [§ 2000e-2(c)] concerns the union's role as the employees' agent (in bargaining and in implementing contracts) and that if a union 'discriminates in the performance of its agency function, it violates Title VII, but not otherwise.'"  437 F.3d 650 (7th Cir. 2006) (citing *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003)).  Relatedly, § 2000e-2(c) creates potential liability on unions for their own conduct, not for the conduct of their members. *Id.* at 653; *see also*; *Ali v. Int'l Broth. Of Elec. Workers, Local 21*, 411 Fed. App'x 917, 918 (7th Cir. 2011) ("And in its role as a labor organization, a union may

4

be liable for discriminating against members or a prohibited group when performing *union* functions.") (emphasis in original).

Here, the question is whether Mr. Jones, a supervisor who is not represented by Local 135, can bring a claim against Local 135 for hostile environment harassment created by the conduct of Local 135 members. The Seventh Circuit previously rejected the argument that "unions have an affirmative duty to prevent racial harassment or other forms of unlawful discrimination in the workplace." *Pipefitters*, 334 F.3d at 661. And since a union can violate Title VII only in performance of its agency function, *Pipefitters* and *Maalik* plainly foreclose Mr. Jones' hostile environment claim against Local 135.

Undeterred, Mr. Jones insists that his hostile environment claim may proceed because the individual alleged to have done most of the harassing was a member of Local 135. Therefore, Mr. Jones argues, he was "subjected to discriminatory harassment in the workplace by an agent of an entity covered by Title VII." Dkt. 39 at 4. This misunderstands the circumstances under which a union may be held liable under Title VII for "the performance of its agency function." *Pipefitters*, 334 F.3d at 659. A union acts in an agency capacity when it, for example, represents employees during collective bargaining agreements and implementing contracts, *Maalik*, 437 F.3d at 652; presses or refuses to press grievances, *Pipefitters*, 334 F.3d at 659; and provides job referrals, *Johnson v. Int'l Longshoreman's Ass'n, Loc. 812 AFL-CIO*, 520 F. App'x 452, 454 (7th Cir. 2013).

5

Here, Mr. Jones does not allege that Local 135 functioned on his behalf in an agency capacity. *See* dkt. 33. Mr. Jones is not a union member. Dkt. 39 at 5. On the contrary, his position as a manager at UPS likely forecloses Local 135 from serving as an agent for him. 29 U.S.C. § 152 ("The term 'employee' . . . shall not include . . . any individual employed as a supervisor); *N.L.R.B v. KY River Comm. Care, Inc.*, 532 U.S. 706, 708 (2001) ("Under the National Labor Relations Act, employees [who] are deemed to be 'supervisors,' . . . [are] excluded from the protections of the Act."). So, although unions do represent non-members (i.e., the broader "bargaining unit"), *Pipefitters*, 334 F.3d at 659, 661, nothing in Mr. Jones's complaint remotely suggests that Local 135 ever acted as his agent. *See Pipefitters*, 334 F.3d at 659.

Last, Mr. Jones' argument that he is within the "zone of interests" of § 2000(e)-2 to establish potential liability against Local 135 similarly fails to state a claim. Dkt. 39 at 5–6. Mr. Jones cites *Thompson v. North American Stainless*, 562 U.S. 170 (2011) in support of his argument. There, the Supreme Court found that an employee who had not engaged in protected activity was retaliated against for the protected activity of his fiancée. The plaintiff therefore fell into the "zone of interests" of Title VII and had standing to sue. *Id.* at 176–78. Here, the issue is whether Local 135 could be liable to Mr. Jones under § 2000e-2(c) of Title VII. For the reasons discussed above, it can't. The "zone of interest" argument therefore does not save Mr. Jones' Title VII claim against Local 135.

In sum, Local 135 took no action on Mr. Jones' behalf and did not ever purport to represent him. Giving Mr. Jones the "benefit of imagination" as the Court must when ruling on a motion to dismiss, *Chapman*, 875 F.3d at 848, he has not "presented a story that holds together," *Bilek*, 8 F.4th at 586, for a claim under Title VII against Local 135.

### B. Supplemental jurisdiction over state law claim

Mr. Jones's complaint next alleges a state law defamation claim. Dkt. 33 at 4. Mr. Jones argues that relinquishing the state-law claim at this stage would be premature. Dkt. 39 at 6. Local 135 argues that federal jurisdiction over the state law claim should be relinquished because no special exception to retaining jurisdiction is present. Dkt. 40 at 12.

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Management Co., Inc. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). The presumption that the court will relinquish federal jurisdiction over any supplemental state-law claims "is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ*, 672 F.3d at 479. The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3)

7

>  when it is absolutely clear how the pendent claims can
>  be decided.

*Id.* at 480.

Mr. Jones argues that the parties should be allowed to brief the state claim issue "when the time comes" because they do not know how much time will remain on the statute limitations or where the parties may be in discovery. *See* dkt. 39 at 6. That argument is unavailing because relinquishment of a state claim is decided when the federal claim drops out of the case. *RWJ*, 672 F.3d at 478; *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720 (7th Cir. 2010). Here, Mr. Jones had an opportunity to fully address this issue in his response to the motion to dismiss but didn't do so. Mr. Jones' argument regarding the statute of limitations, dkt. 39 at 6, is also unavailing. Under 28 U.S.C. § 1367(d), the statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Here, that means the statute of limitations has been tolled and Mr. Jones can refile the claim in state court during the tolled period if he chooses.

Mr. Jones argues in the alternative that the status of discovery is uncertain, so relinquishment may lead to duplicative efforts. Dkt. 39 at 6. At this early stage in proceedings, there have not been "significant federal resources . . . expended to decide the state claims." *RWJ*, 672 F.3d at 480. As to the state law claim, there are no pending motions, and the Court has not addressed the claim' merits. *See id.* at 481. Although discovery has

8

commenced, *see* dkt. 52, the docket does not reflect that substantial discovery has occurred on the state issue to warrant retaining supplemental jurisdiction for judicial economy concerns.

The Court therefore declines to exercise supplemental jurisdiction over Mr. Jones's state law claims.  *See RWJ*, 672 F.3d at 479.

## IV.
## Conclusion

Local 135's motion to dismiss is therefore **GRANTED** as to Mr. Jones's Title VII claim and the Court declines to retain supplemental jurisdiction over his state law defamation claim.  Dkt. [36].

Ordinarily, a plaintiff whose complaint is dismissed "should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).  But if the Court is certain that amendment would be futile, it may deny leave to amend.  *Id.*  Here, Mr. Jones has already amended his complaint and further amendment appears futile, therefore, he **SHALL HAVE through February 18, 2026,** to show cause why final judgment should not enter for the reasons stated in this order.

**SO ORDERED.**

Date: 1/29/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel